Morning. My name is John Petrie, and I'm here representing X2 Biosystems, Inc., the appellant in this action. The issue before the court largely is this contract exclusion, and I think the briefing to the court has certainly shown that we have a view of the matter that is completely different than does federal insurance. And the whole thing comes down to the use of two words, and that is liability under contract versus whether the exclusion applies to claims which arise under the contract itself or relates to the contract. Well, it's broader than that, isn't it? It's based upon arising from or in consequence of. You're correct, Your Honor. It is, and I have always used, I accuse federal of being short with what's in the exclusion, and I must admit that I've done the same because I've just taken arising out of liability under contract. Essentially, the arising out of is the important issue or the important language. I don't intend to exclude the other language, but I don't think that it's consequential when addressing the exclusion itself. Well, actually, with respect, at least for me, in consequence of is important and based upon is important based on some of these things because some of them like the special trust relationship would not have existed had there not been a contract. So, at least for my purposes, I would be interested in knowing what you think your strongest case is, which of your claims is least likely to be based upon or arise out of a contract. Which of the claims four and five, the special relationship or conversion? It doesn't need to be that. Which of your claims do you believe most likely gets you home, gets you covered? If I understand you, you're asking which of the bite tech claims? Correct. Okay. I don't think it matters which one is the better one because… What's the best one? The conversion claim most likely is even better than the special relationship. At a minimum, what happens is that the bite tech people did allege that the special relationship existed because of the contract. I am here paraphrasing. I would hope the court would look specifically to the language of the bite tech complaint. But the conversion itself is alleged to be having been occurring even during… In fact, both of them, both of these claims were allegedly occurring even prior to there being a termination of the contract. But then aren't they a consequence of or arising out of, related to? I couldn't unpack conversion even as it talks about the contract and the claim from it being connected to the contract. Well, that's why there's a significant difference between the parties here relating to the words arising under liability under the contract. I agree with you because there are some of these claims that they don't necessarily arise, they are not predicated necessarily on the liability under the contract, but they are a consequence of or in connection with the contract, aren't they? I mean, there's nothing else but the contract, it seems to me.  So tell me where I'm missing it. We take the position that the contract needs to be ignored. We recognize, as a matter of fact, that these two parties never would have been in a lawsuit at all if there hadn't been a contract between the two of them. That clearly would not have happened. We would not have been sued for conversion if they hadn't signed this technology contract. But where does conversion, then, let's take conversion, why isn't that within the ambit of these three different phrases in connection with the contract? I mean, what takes it out of that? Well, the fact that it's not, again, I think that the three different phrases in the exclusion all relate to liability under the contract, and so the issue really is what does liability under the contract mean? How do you get that? It doesn't relate to liability. That's not what it says. That's the fundamental difference, I think, between you. You would cabin those words with specific liability under the contract, correct? Yes. Okay. But does the insurance policy, or I shouldn't say the policy, does the exclusion say that? The exclusion says that it excludes claims which arise out of or are in consequence of liability under the contract. Yes. And, therefore, we must look at each one of those words, not just a portion of those words, as federal has put together in its briefing. And when one considers whether you are dealing with arising from or you are dealing with as a consequence of, it still has to arise or be a consequence of liability under the contract. Well, let me ask you this, Counsel. Do you agree that the payments that you claim were converted came about as a result of their consideration for the licenses, right? That's what the consideration was. Right. They paid $250,000 eight times. The licenses are a contract, right? Under the technology licensing agreement. That's correct. Okay. So that's a contract. So then the question is if the payment that was allegedly converted came about as a result of a contract, does not the exclusion expressly cover that? No, Your Honor. You're asking me. I'm sorry. I'll listen to you. You know, based upon, there's no coverage for any insured organizational claim based upon arising from or in consequence of any actual or alleged liability or insured organization under any written or oral contract or agreement. Well, here you've got an agreement. There is a payment made. You claim it was converted. There would have been no payment but for the contract, right? Correct. But there could have been payment but for the liability under the contract, yes. And there is no but for analysis in the Washington law on duty to defend either. I agree with that. Because American Best Foods says that there isn't. They did not allow the analysis of the arising from in the exclusionary language in American Best Food to apply with a but for analysis at all. But then when I look at the claim on the conversion, it says at the time of the demand, about after the royalty payments, Vitek retained a property interest in the funds because they were an advanced royalty payment under the agreement, the contract. You're reading the allegation of the complaint? Yes, I am. Oh, I'm sorry. Okay. And they, you know, X2 failed to return the funds, which constitutes a separate and an additional conversion of the funds. So I realize that you're trying to make a separate claim being the conversion claim, but I don't see how you could unpack that from liability under the contract. Could you explain that? That's why we gave the court the additional dictionary definitions of what we're dealing with. The issue is what does it mean to have liability under the contract? And if there is imperfect knowledge about what that means, courts in Washington look to dictionary definitions. And the dictionary definitions essentially point to there must be an obligation in the contract that was breached. That's what the liability under contract means. That's why we gave the court the Webster dictionary definitions, probably from the online. I must say I've forgotten that part of it. It's been a while since we did that briefing. But the point is, though, that this exclusion still needs to be addressed and interpreted narrowly. Well, I recognize you're quoting from the complaint, but under Washington law, there must be a liberal reading of the complaint. And the issue really does get down to this. Is it conceivable that a court would determine that there is liability or, excuse me, that this exclusion would not apply to these special relationship and these conversion claims? And that's what the most recent Washington case law from movie Fireman's Fund to American Best Foods to Expedia versus Steadfast, Vanport Homes, that's what our court looks to to determine. And there is no doubt that federal is honestly believing that their position is correct. But there are cases which we've cited which do recognize that there is a distinction when the exclusion states that it excludes claims which arise from or are a consequence of liability under contract versus arising from or consequence of the contract. There are many cases, including what's really significant here is that there is a Washington case. Despite its age, it is still the law and it's never been overruled. And so the question is, if you are an insurance carrier who has been given a complaint that has been tendered to you, what are you obligated to do? You are obligated to analyze the law. And if there is any difference between the insurance company's position and the insured's position, the cases, American Best Food, movie Fireman's Fund, Vanport Homes, they all say you must give the benefit of the doubt to the insured. And federal didn't do that. It doesn't mean that in Washington law. You can't take an absurd position and the insurance company takes the position. Then you say, well, therefore the exclusion doesn't apply because the insured took a position that was in contravention of the insurance company. So it doesn't literally mean any position that an insured would take would somehow get it out of the exclusion, does it? Your Honor, I think that a court looking at this decides whether or not a position proffered by the insured has a rational basis. If it has no rational basis, then I would tend to agree with you. So it has to have a rational basis and then it has to be some low standard of conceivability is what you're saying. It was a very low standard because it's whether or not it is, forgive me, the carrier must show that there is no possibility of coverage, yes. But that's what our Washington court does. And when you look at the factual circumstances in cases such as American Best Food, and for heaven's sakes, even Wool v. Fireman's Fund, what happened is the carrier had not properly interpreted what was the practice of dentistry. And the court said the practice of dentistry included even the type of operation where the dentist put the boar head flippers inside of his employee's mouth during the time that she was out. Can I get back for just a second, counsel, to the conversion claim? As I understand it, Bitech claimed that X2, which is your client, right? Yes. Wrongfully received and retained advanced royalty payments under the contract. You were potentially liable for that claim, right? That's what they claimed. Okay. So if you go back to your definition here again, you've got a potential liability arising out of a written contract. I agree with what you said, Your Honor, but you have to have the liability under the contract. And that's not what this claim is. It arises from a contract, yes, but it doesn't arise from liability under the contract. In fact, that conversion was allegedly committed even before Bitech says we breached the contract. The conversion flows, though, from the alleged liability that you had under the contract. I don't see it. I see that it flows from the existence of the contract. But the liability under the contract is specifically alleged in counts 1, 2, 3, and 6 of this complaint that Bitech filed against X2. And there is not a claim of that those claims 4 and 5 arise from or a consequence of any of the liability that arose as a result of the claims 1, 2, 3, and 6. Okay. Or 7 for that matter. Do you want to save your remaining time for rebuttal? You have a minute. I would. I think I have a minute. Thank you. Thank you. Good morning. Robert Traylor on behalf of Federal Insurance Company. Why don't we start where Mr. Petrie left off. Under the Washington Court of Appeals, this arising from, et cetera, does have a broad meaning, originating or growing out of, et cetera. But you still are cabined by the word liability. And he's arguing that with respect to conversion, that it's actually unhinged from liability given the timing and the consequences. Could you respond to that? Sure, Your Honor. This case comes down to what Bitech alleged. And I think there are three dispositive allegations in the Bitech complaint in paragraphs 42, 49, and 52. Forty-two deals with the special conversion claim. Forty-nine and 52 deal with the conversion claim. You specifically asked about the conversion claim. And at paragraph 49 to ER 41, it says payments were made, quote, because it reasonably believed that X2 intended to fulfill all the terms of the agreement. Those payments were based on the agreement. And it goes on at paragraph 52, and it says, at the time of this demand, Bitech retained a property interest in the fund because they constituted an advance royalty payment under the agreement. The conversion claim is inextricably embedded into the contract. And therefore, there is no in- The conversion is of the royalty payment. Correct, Your Honor. So there is no basis for the conversion claim. There's no conceivable basis. No way to get around the existence of the contract. And the funds are the subject of the conversion claim. The funds paid as advance royalties under that contract. So this case really does just come down to those allegations. That's all I submit that this panel needs to look to, 42, 49, and 52. The language of the exclusion, which Federal agrees, Washington law applies. Exclusions are to be read narrowly. But in this case, it's a pretty darn broad exclusion. It says, based upon arising from or any consequence in- from any actual or alleged liability for an insured organization. Let me just stop right there, because a couple of cases they've cited, for instance, the Foodtown case, which they put a lot of stake on, that didn't involve an insured organization. That involved an individual board member of fiduciary duty claim. This is a restricted exclusion of an insured organization. So Foodtown has no relevance whatsoever, even though it's factually a deposit also. And then it is- then it goes to the definition of the contracts and says under any written or contract or agreement. So it is very broadly written and covers exactly the types of allegations here. If the allegations had been different, this might be a different case. But the allegations say what they say. You saw Mr. Petrie's 28-J letter, right? Where he- I did, Your Honor. He calls our attention to the Lifespan case. Right. What's your response to that or comment? That is a district court out of Rhode Island case, which I think frankly illustrates how far X2 is trying to go to find something to support their case, is the first comment. But second, that case- Is it well-reasoned? Well, in that situation, it was the Massachusetts Attorney General that stepped into that case after a settlement between the two principal contracting entities, Lifespan and NEMC. And the court there looked to the Attorney General's actions and said that was not based upon arising from or in consequence of the contract. It's a separate matter that arises out of the Attorney General's duties in the public interest to intervene and take a step and take a stand about the validity of that contract or there were also some issues about some option arrangement there, some credit swaps. So I think that that case simply has nothing to say, has no bearing on what is alleged here as those allegations are applied to this very straightforward and clear exclusion. Let me ask a slightly different question. The district court was musing on this contract and saying that in some instances, language such as this has been found to be ambiguous, but under these facts, it's not. But if the language is ambiguous, then what's the basis or ground for the district court making that observation? I think in that instance, the district court, this district court was discussing their arguments pointing to a case out of the district court in Wisconsin, a case called Cousin Submarine. But let's look to the holding of Cousin Submarine, which has involved a franchisor-franchisee dispute. And there, despite ruminations about its difficulty in reading the language, it came down and applied the exclusion to bar the claims under the exclusion. So I think that those musings, while interesting, frankly, have no real relevance here whatsoever. And there isn't a published case out there that would say this exclusion is ambiguous. And in fact, I think every case out there which applies this, we've seen it from the Third Circuit, the Fifth Circuit, the Eighth Circuit, all have no problem applying this exclusion. This language has been used in a lot of contracts and litigated in many other jurisdictions, right? It has, Your Honor. It's fairly standard language that we've seen in a number of cases. It is, Your Honor. Okay. And if I could have just one last comment then, and then I'll sit down if there are no further questions. I don't think that the – well, let me back up. X2 places a great deal of import on this O2L case. And so a comment there, which is a 1935 case that has never been cited for the proposition that they would like to use it for. It's also clearly distinguishable when you have a situation where there is a general tort duty, a general societal duty to effectuate car repair non-negligently. The contract there simply had no basis, no bearing upon the result. There was a societal duty. Here there is no societal duty between these two contracting parties. So O2L has no relevance whatsoever in this case. If the panel has no further questions, I'll – Thank you. Thank you. Over here first. Your Honor, the Lifespan case dealt with and said that claims made by one of the parties against the other, not just the Attorney General's claim, was a covered claim under identical exclusionary language as is in this case. There are credible cases out there that we have cited that have also identified that claims are not excluded when they come with a breach of contract claim such as the special relationship or the conversion. Perhaps I'd even modify, after thinking about your question, Your Honor, maybe the special relationship claim is even better than the conversion claim because that type of claim has been identified by these courts that we cite to you in our briefing as something that either was not arising from the liability or consequence of the liability under contract or it fit within the exception or the escape clause of the exclusion. And those cases are sufficient under what we consider in the State of Washington under American Best Food as credible out-of-state case law that would potentially influence a Washington State court to provide that – or to decide that these claims alleged by BITEC are included as claims that should be defended under this policy. Thank you. Thank you. I'd like to thank you both for your argument this morning. The case of X2 Biosystems v. Federal Insurance is submitted.
judges: Tashima, McKeown, M. Smith